UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JODILYN W.,[1]

                      Plaintiff                  DECISION AND ORDER

-vs-

                                        1:20-CV-01342 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                      Defendant.

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits.  Now before the Court is Plaintiff's motion (ECF No.14) for judgment on the pleadings and Defendant's cross-motion (ECF No. 15) for the same relief.  For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

In the administrative proceedings before the Commissioner, Plaintiff, who previously worked for approximately ten years as a habilitation specialist,[3] claimed to have become disabled as of February 27, 2015, due to a combination of impairments including sarcoidosis, degenerative disc disease of the spine and anxiety. Plaintiff was insured for SSDI benefits through June 30, 2020.

On May 30, 2019, after Plaintiff's claim was denied initially, an Administrative Law Judge ("ALJ") conducted a hearing, at which Plaintiff appeared with an attorney. The ALJ took testimony from Plaintiff and a vocational expert ("VE").

On June 17, 2019, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability-onset date and the date of the decision. Tr. 27-37. The ALJ

---

[3] Tr. 50.

applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of "sarcoidosis, degenerative disc disease and skin rash," and non-severe impairments including hypertension, hernias, obstructive sleep apnea and obesity. Tr. 29-31.[4]  The ALJ further found that Plaintiff had the RFC to perform work at the light exertional level,

> except she occasionally can balance, crouch, kneel, crawl, stoop and climb ramps and stairs and cannot climb ladders or scaffolds; she occasionally can push, pull and operate foot controls with the lower extremities; she needs to avoid concentrated exposure to crowds, extreme temperatures, wetness, humidity, vibrations, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants; she need[s] to avoid exposure to hazards, such as unprotected heights, machines with moving mechanical parts, and driving employer vehicles; she will be off task up to 10% of the day due to, for example, alternating positions and/or attention/concentration lapses.

Tr. 32.  The ALJ found that with such RFC, Plaintiff could not perform her past relevant work as a habilitation specialist, but could perform several specific light-exertional jobs in the national economy which the VE had identified. Tr. 35-36.  Consequently, the ALJ found that Plaintiff was not disabled.[5]

With regard to the RFC finding, the ALJ stated, in pertinent part, that he had evaluated Plaintiff's subjective complaints, concerning the limiting effects of her symptoms, in accordance with the Commissioner's regulations and found that they were not entirely consistent with the record as a whole, including the medical opinion evidence.  The ALJ observed, for example,

---

[4] The ALJ found that Plaintiff's severe- and non-severe impairments did not, either singly or in combination, meet or medically equal a listed impairment. Tr. 31-32.  Plaintiff has not objected to the ALJ's findings at the first three steps of the sequential evaluation.
[5] Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, making the ALJ's ruling the Commissioner's final decision.

5

that Plaintiff claimed to be "in constant pain, primarily from her back, and to be unable to sit or stand for more than fifteen minutes at a time. Tr. 32-33.  The ALJ further noted that Plaintiff claimed to often feel tired and fatigued. Tr. 33.  The ALJ explained, however, why he felt that the evidence overall did not support limitations greater than those contained in the RFC finding, limiting Plaintiff to light work with additional restrictions intended to address her specific non-exertional limitations. Tr. 32-35.  In doing so, the ALJ discussed various pieces of evidence that he found were inconsistent with Plaintiff's subjective complaints. Tr. 32-35.

Particularly regarding the 10% off-task limitation, the ALJ reviewed the medical opinion evidence concerning Plaintiff's ability to pay attention and concentrate. The ALJ noted, for example, that consultative examiner Christine Ransom, Ph.D. ("Ransom"), had found that Plaintiff's attention and concentration were intact. Tr. 30 ("The claimant contended that she has limitations in concentrating and focusing generally (Hearing Testimony).  [But,] [a] consultative examination also revealed the claimant's attention and concentration were intact (9F/s)."); *see also, id.* at 31 (Mentioning "Dr. Ransom's findings of normal mood, affect, concentration, memory, and cognitive functioning[.]").[6]  The ALJ consequently found that Ransom's report supported no more than mild limitations in mental functioning. Tr. 31 ("Dr. Ransom's findings of normal mood, affect, concentration, memory, and cognitive functioning support no more than mild limitation in any of the functional areas.").  The ALJ further observed that a state agency psychological consultant had similarly found that Plaintiff would have only "mild limitations in concentrating, persisting or maintaining pace." Tr. 31.  Indeed, no medical source indicated that

---

[6] Ransom reported that Plaintiff reported occasional anxiety that was well-treated with medication as needed, but that she denied any cognitive symptoms. Tr. 652-653.  Upon examination, Ransom found "no evidence" that Plaintiff had any limitation to "sustain concentration to perform a task at a consistent pace." Tr. 654.

6

Plaintiff would have more than mild limitations in those areas of functioning. Similarly, with regard to Plaintiff's ability to sit and stand, the ALJ noted that a consultative physical examiner had found that Plaintiff would have only mild to moderate limitations with "prolonged sitting, standing, and postural activities." Tr. 35.

Nevertheless, the ALJ indicated that he was including the 10% off-task limitation based on Plaintiff's hearing testimony, which he partially credited:

> [T]o accommodate for the claimant's reported difficulty concentrating, as well as sitting and standing for prolonged periods, due to her pain, I find that she needs to avoid concentrated exposure to crowds and will be off task 10% of the day due to alternating positions and/or attention/concentration lapses.
> ***
> [T]he claimant's testimony regarding difficulty concentrating and sitting or standing for prolonged periods due to pain supports a limitation for time off task during the workday (Hearing Testimony).

Tr. 34. In other words, the ALJ reached an RFC finding concerning Plaintiff's ability to remain on-task that was arguably more restrictive (*i.e.*, more favorable to Plaintiff) than what had been indicated by the medical evidence alone. *See, e.g.*, Tr. 34 ("I find that the evidence supports greater limitations than given in [the state agency medical consultant's] findings.").

Plaintiff's subject action in federal court is focused solely on the aspect of the RFC finding indicating that she could be off task up to 10% of the day. Specifically, Plaintiff maintains that remand is required since the ALJ did not sufficiently explain why she would be off-task only 10% of the time, as opposed to some greater or lesser amount of time. Indeed, Plaintiff asserts that there is no evidence of record from which the ALJ could have made that finding, and that the RFC finding is therefore not supported by substantial evidence. Notably, on that point, Plaintiff insists that when an ALJ makes a "highly specific" RFC finding, such as a finding that a claimant

7

will be "off task" for a particular percentage of the time, such finding must be directly supported by some evidence, specifically medical opinion evidence, otherwise the finding will amount to the ALJ's mere "surmise."[7] *See*, Pl. Memo of Law (ECF No. 14-1) at p. 13 ("To make an RFC with highly specific findings, an ALJ must rely on medical opinion evidence for the analysis.") (citation omitted). Plaintiff concedes, in arguing this point, that the record contains no medical opinion that she would be off task for any amount of time, for any reason.[8]

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence. More specifically, Defendant rejects Plaintiff's contention that a highly specific RFC finding must be supported by medical opinion evidence, and asserts that the ALJ here properly made his RFC finding based on Plaintiff's hearing testimony:

> The ALJ did not base the off-task portion of the RFC on a medical opinion. Rather, the ALJ permissibly used his discretion and based it on Plaintiff's report of difficulty concentrating, and an inability to sit/stand for prolonged periods of time due to her alleged pain.

ECF No. 15-1 at p. 2. Defendant further maintains that Plaintiff failed to show that she would be off-task more than ten percent of the time.

The Court has carefully reviewed and considered the parties' submissions.

## DISCUSSION

### The ALJ's Alleged Erroneous Highly Specific RFC Finding

Plaintiff contends that the ALJ's "highly specific" RFC finding's "time off-task" component

---

[7] ECF No. 14-1 at p. 12 ("[T]he ALJ did not rely on medical, opinion, or other evidence to make this finding. Instead, he relied on his own surmise, and this left the RFC determination unsupported by substantial evidence.").
[8] ECF No. 14-1 at p. 1; *see also, id*. at p.14 ("[T]he ALJ considered several medical opinions, but none included any sort of off task finding.").

is erroneous and unsupported by substantial evidence since it amounts only to the ALJ's "surmise." In that regard, Plaintiff maintains that a "highly specific" RFC finding, meaning one indicating that a claimant can perform activities for a particular length of time, must be supported by specific medical opinion evidence.  Alternatively, Plaintiff contends that the 10% off-task limitation is unsupported by any evidence whatsoever.   However, the Court disagrees.

The general principles concerning the ALJ's function in making an RFC finding are well settled, including the principle that an ALJ's RFC finding need not perfectly correspond to any particular medical opinion, but instead should be consistent with based all of the credible relevant evidence:

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021); *see also*, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille

9

that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

As mentioned earlier, the Commissioner acknowledges that the 10% off-task limitation is not based on any medical opinion, but, rather, is based on Plaintiff's testimony. Plaintiff, however, insists that the 10% limitation cannot be based on her testimony, since she testified that her pain was far worse than what could be accommodated by a 10% off-task limitation.[9] However, that argument is unpersuasive since the ALJ, who was required to make his RFC finding based on the evidence as a whole, and to make credibility findings, did not find Plaintiff's testimony entirely credible, for reasons that he explained. Rather, the ALJ found that a 10% off-task restriction would be sufficient to address Plaintiff's complaints of pain and the need to change position, insofar as he found such complaints partially credible. *See, Timothy K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1529-JJM, 2022 WL 2062711, at *5 (W.D.N.Y. June 8, 2022) ("To the extent plaintiff objects to the ostensible specificity of the ALJ's absentee findings, such findings of modest absentee or off-task findings are merely intended to reflect mild or effectively *de minimis* limitations with deference to plaintiff's subjective complaints. *See Johnson v. Colvin*, 669 Fed. App'x 44, 47 (2d Cir. 2016) (Summary Order).").[10] Consequently, the Court does not

---

[9] *See*, ECF No. 14-1 at p. 15 ("[T]his limitation did not come from Plaintiff's testimony. Plaintiff testified she could only sit or stand for 15 minutes each. She would then need to lie down.") (citations to record omitted).

[10] *See also, Holly M. v. Comm'r of Soc. Sec.*, No. 20-CV-6863MWP, 2022 WL 2160236, at *7 (W.D.N.Y. June 15, 2022) ("As the Commissioner points out, plaintiff does not cite any evidence in the record that contradicts the ALJ's finding that plaintiff "is allowed off task between [five-to-seven percent] of the work day in addition to regularly scheduled breaks and ... no more than one unscheduled or unanticipated absence per month." (Tr. 29). Further, the ALJ here found Dr. Deneen's opinion to be persuasive, and the ALJ's decision suggests that he fashioned the RFC based upon Dr. Deneen's opinion and additional restrictions based upon plaintiff's own testimony, such as her testimony that "[w]orking so hard that [she does not] get a break from anything" can affect her anxiety, stress, and heart rate (Tr. 48-49) and that she has trouble finishing tasks because she tires herself out "after a time" (Tr. 204). Where plaintiff has cited no record evidence supporting more substantial off-task limitations, I do not find that remand is warranted under these circumstances.") (collecting cases).

agree with Plaintiff's contention that the 10% off-task finding is the product of legal error, or that it is unsupported by substantial evidence.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No.14) for judgment on the pleadings is denied, and Defendant's cross-motion (ECF No. 15) for the same relief is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
September 19, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge